Received From SEATTLE

NOV 14 2008

No summons issued IFP

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FILED LODGED ENTERED RECEIVED

NOV 13 2008 RE

CLERK U.S. DISTRICT COURT AT SEATTLE WESTERN DISTRICT OF WASHINGTON BY DEPUTY

| | |
|---|---|
| Rennison V. CASTILLO,<br>Plaintiff,<br>v.<br>Officer Linda M. SWARSKI; Officer Norris POTTER III; Officer Michael MELENDEZ; Officer STEPHENS (male); Officer STEPHENS (female); and John DOES, 1-50, in their individual capacities,<br>Defendants. | CASE NO. C08-5683 BHS<br><br>**COMPLAINT FOR DAMAGES**<br><br>DEMAND FOR JURY |

Plaintiff Rennison Vern Castillo is a citizen of the United States who has honorably served his country in the military. Defendants are federal agents of Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), who illegally detained, interrogated, and then imprisoned Mr. Castillo for seven and a half months, charging him as a "deportable alien", despite the fact that he is a citizen of the United States of America.

For the violations of his Fourth and Fifth Amendment rights, Plaintiff here raises claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against the defendants, individual U.S. Immigration and Customs Enforcement officers. The ICE officers named as defendants here include those who personally ordered that Plaintiff be detained, interrogated and imprisoned for the next seven and a half months, and the supervisors, who, in



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 SECOND AVE., STE. 400
SEATTLE, WA 98104
TELEPHONE (206) 957-8611
FAX (206) 587-4025

08-CV-05683-CMP

failing to provide necessary training and oversight, precipitated and prolonged the harm suffered by Mr. Castillo.

## 1. PARTIES

1.1. Plaintiff: Rennison Vern Castillo is a U.S. Citizen, born in Belize. He has lived in the U.S. since he first came as a child with his mother, and became a U.S. citizen on October 28, 1998, while serving in the U.S. army. He is a resident of Lakewood, Washington.

1.2. Defendants:

1.2.1. At all times relevant, Linda M. Skwarski was a Senior Special Agent of Immigration and Customs Enforcement (ICE), United States Department of Homeland Security. ICE is a federal agency that enforces immigration laws and regulations. At all relevant times Officer Swarski z was acting under color of federal law and is sued in her individual capacity.

1.2.2. At all times relevant, Norris Potter III [person who signed NTA, supervisor of Linda M. Skwarki] was a Supervisory Special Agent of Immigration and Customs Enforcement (ICE), United States Department of Homeland Security. In addition, on information and belief, Norris Potter III was responsible for training and supervision of Linda Swarski, an ICE agent whose conduct caused the injuries alleged herein. At all relevant times Officer Potter was acting under color of federal law and is sued in his individual capacity.

1.2.3. At all times relevant, Officer Stephens [male DRO, name not verified] was a federal agent of Immigration and Customs Enforcement (ICE), United States Department of Homeland Security, stationed at the Northwest Detention Center in Tacoma, Washington. ICE is a federal agency that enforces immigration laws and regulations. At all relevant times Officer Stephens was acting under color of federal law and is sued in his individual capacity.



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 SECOND AVE., STE. 400
SEATTLE, WA 98104
TELEPHONE (206) 957- 8611
FAX (206) 587-4025

1.2.4. At all times relevant, Officer Stevens [female DRO, name not verified] was a federal agent of Immigration and Customs Enforcement (ICE), United States Department of Homeland Security, stationed at the Northwest Detention Center in Tacoma, Washington. ICE is a federal agency that enforces immigration laws and regulations. At all relevant times Officer Stephens was acting under color of federal law and is sued in her individual capacity.

1.2.5. At all times relevant, Michael Melendez was the Immigration and Customs Enforcement Supervising Deportation and Removal Officer for the Northwest Detention Center. On information and belief, at all times relevant, Michael Melendez was responsible for training and supervision of the ICE agents and officers whose conduct caused the injuries alleged herein. At all relevant times Officer Melendez was acting under color of federal law and is sued in his individual capacity.

1.2.6. At all times relevant, John Does 1-50 were agents, employees, or otherwise representatives of U.S. Immigration and Customs Enforcement. On information and belief, John Does 1-50 were acting under color of law, and are sued in their individual capacity.

## 2. JURISDICTION AND VENUE

2.1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331, 1342, and 2201. Plaintiff claims a violation of his rights to be free from unreasonable searches and seizures, rights to due process, and rights to equal protection guaranteed by the Constitution of the United States.

2.2. Venue is appropriate in the Western District of Washington because a substantial part of the events complained of occurred in this District and because upon information and belief most of the defendants reside in this District. See 28 U.S.C. § 1391(b).



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 SECOND AVE., STE. 400
SEATTLE, WA 98104
TELEPHONE (206) 957- 8611
FAX (206) 587-4025

## 3. FACTS

3.1. Renison Castillo was born in Belize on September 23, 1977. He emigrated to the United States when he was only seven years old. He has lived in the United States since that time. On July 23, 1992, he first obtained lawful resident status based on the visa petition his mother filed for him.

3.2. Renison Castillo enlisted in the U.S. military in November of 1996. At that time he was still a lawful permanent resident. While serving in the U.S. military he applied to become a U.S. citizen by filing his N-400 application for naturalization with the Immigration and Naturalization Service (INS) office in Seattle, Washington. At that time he was stationed with the military at Fort Lewis, Washington.

3.3. On July 2, 1998, Mr. Castillo attended his naturalization interview at the Seattle INS office. His application for naturalization was approved and he was sworn in as a U.S. citizen on October 28, 1998, at the same INS office in Seattle, Washington.

3.4. Mr. Castillo was subsequently honorably discharged from the military upon completing the terms of his final tour in July of 2003.

3.5. In 2005, Mr. Castillo was detained in the Pierce County Jail, where he was completing an eight month sentence for violation of a protection order, harassment, and residential burglary. On September 21, 2005, while detained in the Pierce County Jail, Mr. Castillo was approached and questioned by Linda Swarski, Senior Special Agent of Immigration and Customs Enforcement.



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 SECOND AVE., STE. 400
SEATTLE, WA 98104
TELEPHONE (206) 957- 8611
FAX (206) 587-4025

3.6. When questioned by Officer Swarski regarding his immigration status, he informed her that he was a U.S. citizen. He explained that he had applied for naturalization while serving in the military, and that he had been sworn in as a U.S. citizen at the INS office in Seattle.

3.7. Because Mr. Castillo knew he was a United States citizen, he was unconcerned by the ICE Officer's visit. Yet, the record indicates that unbeknownst to Mr. Castillo, that same day, September 21, 2005, Officer Swarski prepared and signed the Form I-213, "Record of Deportable/Inadmissible alien" regarding Mr. Castillo. ICE Supervisory Special Agent N. Potter III also signed his approval and dated the form. On the I-213, Defendants alleged that, "there is no record to indicate subject applied for relief/immigration status." The I-213, "Record of Deportable/Inadmissible Alien" does not mention the fact that Mr. Castillo claimed to be a U.S. citizen, nor that he gave details regarding the application process and where he was sworn in as a U.S. citizen. It is unclear what information Defendants drew upon in alleging on Form I-213 that Mr. Castillo was residing in this Country without status, especially since on the same form the ICE officer recognized that at a minimum Mr. Castillo had previously been granted lawful status under the Family Unity program. The Form I-213 did list Mr. Castillo's social security number, which is also listed on his application for lawful permanent residence and his application for naturalization.

3.8. Unbeknownst to Mr. Castillo, on that same day, September 21, 2005, an immigration detainer was faxed to the Pierce County Jail, advising the Department of Corrections that instead of releasing Mr. Castillo, the Jail was required to detain him for up to 48 hours to allow ICE to take custody of his person. The Immigration Detainer directed the Jail to notify ICE at least 30 days prior to his scheduled release.

3.9. Thereafter, on September 23, 2005, Defendants issued a Notice to Appear, Form I-862, alleging that Mr. Castillo was not a citizen of the United States. The Notice to Appear also



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 SECOND AVE., STE. 400
SEATTLE, WA 98104
TELEPHONE (206) 957- 8611
FAX (206) 587-4025

charged Mr. Castillo as deportable for being present in the United States without admission. Mr. Castillo did not receive a copy of the Notice to Appear until November 15, 2005, the day he was turned over to the custody of ICE.

3.10. On November 15, 2005, Mr. Castillo was scheduled to be released from the Pierce County Jail. Instead of being released, he was told by officers of the jail to wait, as someone would be picking him up. A uniformed immigration officer from ICE arrived and shackled Mr. Castillo. Mr. Castillo was driven away from the jail in a van. Mr. Castillo was not told where he was being taken.

3.11. The van brought Mr. Castillo to the Northwest Detention Center, a federal detention center in Tacoma, Washington. Upon arrival at the Northwest Detention Center, Mr. Castillo sat in a locked cell for approximately six hours.

3.12. After six hours, a female ICE officer, who introduced herself as Officer Stephens (or Stevens), proceeded to question Mr. Castillo. Mr. Castillo told officer Stephens that he was a U.S. citizen, and that he had become a U.S. citizen while serving in the military. He described his naturalization ceremony. He also told Officer Stephens that his first name had been misspelled on his lawful permanent resident card (commonly known as a "greencard"). Officer Stephens informed Mr. Castillo that the information she had in her computer did not substantiate his claims.

3.13. During that same interview, Officer Stephens asked Mr. Castillo if he wanted to go home. Thinking she meant his long time home in Washington State, Mr. Castillo replied in the affirmative. Officer Stephens then handed him paperwork to sign. Mr. Castillo refused to sign after reading the paperwork and realizing that the papers were for a stipulated order of removal to Belize, his country of birth.



**NORTHWEST IMMIGRANT RIGHTS PROJECT**
**615 SECOND AVE., STE. 400**
**SEATTLE, WA 98104**
**TELEPHONE (206) 957- 8611**
**FAX (206) 587-4025**

3.14. A second ICE officer, a male officer also named Stephens, questioned Mr. Castillo following the first Officer Stephens' interview. The second Officer Stephens explained that he had been assigned as Mr. Castillo's Deportation and Removal Officer. Officer Stephens questioned Mr. Castillo at length, repeating the first Officer Stephens' questions, as well as asking Mr. Castillo where he was born, where he'd gone to high school, and where he lived. Mr. Castillo explained to Officer Stephens that he was a U.S. citizen. Mr. Castillo explained in detail about the different schools he had attended in the United States, and then talked to Officer Stephens about his enrollment in the U.S. military, and the naturalization process that he had gone through to become a U.S. citizen while serving in the military.

3.15. Nonetheless, after his interrogation, Mr. Castillo was taken to a men's cell block and assigned a cell. He was given a prison uniform to wear. Defendants issued a notice of Custody Determination, stating that Mr. Castillo would only be released upon posting a bond in the amount of $25,000.00. Mr. Castillo's Custody Processing Sheet makes no mention of the fact that Mr. Castillo claimed to be a U.S. citizen, even though the form specifically asks for any family ties or applications for immigration status.

3.16. As a direct and proximate result of Defendants' conduct, Mr. Castillo has been harmed. Mr. Castillo, a U.S. Citizen, was unlawfully imprisoned by Defendants for the next seven and a half months at the Northwest Detention Center in Tacoma, Washington. Day after day, week after week, Mr. Castillo endured the sufferings caused by this unlawful seizure and deprivation of liberty. As a result of the wrongful detention, Mr. Castillo suffered not only seven and half months of unlawful imprisonment, but also suffered extreme humiliation and emotional distress. Moreover, he lost the opportunity to return to his work during that time.



**NORTHWEST IMMIGRANT RIGHTS PROJECT**
**615 SECOND AVE., STE. 400**
**SEATTLE, WA 98104**
**TELEPHONE (206) 957- 8611**
**FAX (206) 587-4025**

3.17. In addition, Mr. Castillo suffered great harm based on his fear that he might be unlawfully deported and banished from his home and family. For seven and a half months, he lived in constant fear of permanent exile from the United States, the country to which he had sworn allegiance when becoming a citizen, the country for which he had honorably served for over six year in the military, and the country that had been his only home for over twenty years.

3.18. Initially Mr. Castillo assumed that ICE would search their records and quickly realize their mistake and release him from custody. Instead, for the next seven and a half months ICE sought to have the Executive Office for Immigration Review order him removed from the United States.

3.19. After detaining Mr. Castillo, Defendants placed Mr. Castillo in removal proceedings by filing the Notice to Appear with the Immigration Court. Attorneys from ICE's Office of Chief Counsel proceeded to represent ICE against Mr. Castillo in these proceedings. Mr. Castillo appeared, unrepresented, in Immigration Court on December 21, 2005. He pleaded with the Immigration Judge Kenneth Josephson, once again explaining that he had served his country in the military and had been honorably discharged after serving more than six years. Most importantly, he explained that while in the military he had applied for naturalization and been sworn in as a U.S. citizen. The Judge responded that Mr. Castillo "can't just expect me to believe you – your claim that you're a United States citizen." The Immigration Judge asked the attorney representing ICE for ICE's position.. The ICE attorney responded that they had checked the database, and there was nothing to indicate that Mr. Castillo had ever filed to become a U.S. citizen.

3.20. The Immigration Judge then reset the hearing for a month later in order to allow the two sides to gather more evidence. ICE kept Mr. Castillo in custody during that month, thus greatly impeding any chance that Mr. Castillo, a detained, unrepresented individual would be able to submit



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 SECOND AVE., STE. 400
SEATTLE, WA 98104
TELEPHONE (206) 957- 8611
FAX (206) 587-4025

any additional evidence to demonstrate that he is a U.S. citizen. Mr. Castillo again talked to his deportation officer to see if the deportation officer had checked Mr. Castillo's military records, his social security records, or his immigration file in order to verify Mr. Castillo's claim of citizenship. Whenever possible, Mr. Castillo followed up with Officer Stephens, asking for updates on his case. He repeatedly informed Officer Stephens that he was a U.S. citizen, mentioning his military record, his social security number, and other identifying information. His deportation officer simply stated that he would keep looking.

3.21. In Immigration Court the next month, on January 24, 2006, the immigration judge once again asked the attorney representing ICE if ICE had found any evidence of Mr. Castillo's naturalization. Once again, ICE's representative affirmed that they had found nothing in their database to support Mr. Castillo's claim. The Judge then ordered Mr. Castillo removed from the United States.

3.22. After the hearing, Officer Stephens, the ICE Officer assigned as Mr. Castillo's deportation officer, laughed at Mr. Castillo, mocking him for having been ordered removed.

3.23. Mr. Castillo filed an appeal of the judge's order of removal with the Board of Immigration Appeals. Meanwhile days, weeks, and months passed with Mr. Castillo remaining unlawfully imprisoned. He obtained legal representation from Northwest Immigrant Rights Project, who filed a military records request on his behalf.

3.24. On April 27, 2006, Mr. Castillo discovered in his military records that immigration had assigned him two Alien numbers ("A numbers"), the one currently used in the removal proceedings, and a second A number, A43 338 414. On April 28, 2006, Ms. Castillo renewed his request for a copy of his naturalization certificate with USCIS, using both A numbers, A70 709 541 and A43 338 414.



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 SECOND AVE., STE. 400
SEATTLE, WA 98104
TELEPHONE (206) 957- 8611
FAX (206) 587-4025

3.25. Notably, his immigration file contained records of both of these numbers. For example, his Certificate of Citizenship contains the number A 43 338 414. However, the Notice of Naturalization Oath Ceremony, which he received during the same naturalization process, contained the alien number A70 230 386. Mr. Castillo was fingerprinted by ICE when he was first booked into ICE custody on November 15, 2005. Thus, ICE had access to his complete immigration history under any immigration numbers that had been assigned to him during the entire time they unlawfully imprisoned him.

3.26. On June 29, 2006, after Mr. Castillo had been unlawfully imprisoned for 226 days (seven and half months), the attorney for ICE filed a motion to dismiss the case against Mr. Castillo, advising the immigration court that the proceedings had been "improvidently begun." That same day Mr. Castillo was finally released

3.27. On information and belief, with deliberate indifference, intent, or reckless disregard, Defendants failed to adequately and properly train and supervise Agents X and X and other officers and agents involved in the arrest, detention, questioning, and removal proceedings to which Mr. Castillo was subjected. On information and belief, Defendants' failure to provide proper and adequate training and supervision was a proximate cause of the injuries that Mr. Castillo suffered.

## 4. COLOR OF FEDERAL LAW

4.1. Defendants committed the above-described acts within the scope of their authority as federal agents and under color of the laws of the United States.

## 5. CLAIMS FOR RELIEF

5.1. First Cause of Action: Violation of Fourth Amendment Rights. By the above-



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 SECOND AVE., STE. 400
SEATTLE, WA 98104
TELEPHONE (206) 957- 8611
FAX (206) 587-4025

described acts, defendants denied plaintiff the right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the Constitution of the United States.

5.2. Defendants' conduct proximately caused harm to plaintiff.

5.3. Defendant's conduct was done intentionally, with deliberate indifference, or with reckless disregard of plaintiff's constitutional rights.

5.4. Second Cause of Action: Violation of Fifth Amendment Right to Due Process. By the above-described acts, defendants denied plaintiff the right not to be deprived of liberty or property without due process as guaranteed by the Fifth Amendment to the Constitution of the United States.

5.5. Defendants' conduct proximately caused harm to plaintiff.

5.6. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of plaintiff's constitutional rights.

5.7. Third Cause of Action: Violation of Fifth Amendment Right to Equal Protection. By the above-described acts, defendants denied plaintiff the right to equal protection guaranteed by the Fifth Amendment to the Constitution of the United States.

5.8. Defendants' conduct proximately caused harm to plaintiff.

5.9. Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of plaintiff's constitutional rights.

## 6. REQUEST FOR RELIEF

WHEREFORE, plaintiff requests relief as follows:

6.1. Trial by jury.

6.2. Compensatory damages in an amount to be proven at trial.



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 SECOND AVE., STE. 400
SEATTLE, WA 98104
TELEPHONE (206) 957- 8611
FAX (206) 587-4025

6.3. Punitive damages in an amount to be proven at trial.

6.4. Costs and reasonable attorney fees.

6.5. The right to conform the pleadings to the proof and evidence presented at trial.

6.6. Such other relief as the Court deems just and equitable.

Dated this 13th day of November 2008

Respectfully submitted,

NORTHWEST IMMIGRANT RIGHTS PROJECT

Matt Adams
WA State Bar #28287
matt@nwirp.org

Angelica Chazaro
angelica@nwirp.org
NY State Supreme Ct., 3rd Judicial Dept.

Matt Adams
Angelica Chazaro
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611 (Phone)
(206) 587-4025 (Fax)

Attorneys for Plaintiffs

**PROOF OF SERVICE BY PERSON**

I, the undersigned, say:

I am over the age of eighteen years and not a party to the within action or proceedings; my business address is: Northwest Immigrant Rights Project, 615 Second Ave., Ste. 400, Seattle, Washington 98104.

On November 12, 2008, I caused the **Complaint for Damages** be served on the offices listed below by delivering in person a true copy, thereof, to:

Assistant U.S. Attorney's Office
700 Stewart St., Ste. 5220
Seattle, WA 98101-3903

Office of Chief Counsel for Immigration and Customs Enforcement
1000 Second Ave., Ste. 2900
Seattle, WA 98104

And to the offices listed below by depositing a true copy, thereof, enclosed in a sealed envelope with postage fully pre-paid, to:

Office of the General Counsel
US Dept of Homeland Security
Washington DC 20258

Office of the Principal Legal Advisor
Immigration and Customs Enforcement
United States Department of Homeland Security
425 I Street NW, Room 6100
Washington, DC 20536

Executed on November 13, 2008, at Seattle, Washington. I declare under penalty of perjury that the foregoing is true and correct.

Angelica Chazaro ________________________
Declarant



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 SECOND AVE., STE. 400
SEATTLE, WA 98104
TELEPHONE (206) 957- 8611
FAX (206) 587-4025