UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RENNISON V. CASTILLO,<br><br>          Plaintiff,<br><br>   v.<br><br>OFFICER LINDA M. SKWARSKI, et al.,<br><br>          Defendants. | CASE NO. C08-5683BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AND REQUESTING JOINT SUBMISSION |

This matter comes before the Court on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. 22). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On November 28, 2008, Plaintiff Rennison Castillo filed a complaint against Defendants Linda Skwarski, Julie Stephens, Carl Stephens, Norris Potter, and Michael Melendez. Dkt. 3. On August 21, 2009, Plaintiff filed an Amended Complaint. Dkt. 19 ("Complaint"). Plaintiff alleges that Defendants are federal agents of Immigration and Customs Enforcement ("ICE"), a component of the Department of Homeland Security ("DHS"). *Id* at 1.

On October 2, 2009, Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Dkt. 22. On October 26, 2009, Plaintiff responded. Dkt. 23. On October 30, 2009, Defendants replied. Dkt. 26.

## II. FACTUAL BACKGROUND

In the instant motion, Defendants attack the Plaintiff's pleading, as well as move for summary judgment. *See* Dkt. 22. Defendants have submitted evidence in support of their motion for summary judgment. *See id.*, Exhs. A-J. For organizational purposes, the Court will separate the facts alleged in the pleadings from the facts submitted in support of the motion.

**A.   The Complaint**

Plaintiff alleges that he was born in Belize in 1977 and emigrated to the United States when he was seven years old. Complaint ¶ 3.1. On March 29, 1990, Plaintiff's mother completed an Immigration and Naturalization Service Form that indicated that Plaintiff's alien number ("A number") was xx-xxx-541 and that his social security number was xxx-xx-1692. *Id.*, Exh. B. Plaintiff's mother spelled his first name as "Renison." *Id.* The form also indicates that, at that time, Plaintiff's immigration status was "illegal." *Id.*

On July 23, 1992, Plaintiff was granted permanent resident status under a second A number, xx-xxx-414. *Id.* ¶ 3.3; *see also id.*, Exh D. In November 1996, Plaintiff enlisted in the United States military. *Id.* ¶ 3.5. While serving in the United States military, Plaintiff applied to become a United States citizen. *Id.* ¶ 3.6. Plaintiff's application was approved and on October 28, 1998, Plaintiff was sworn in as a United States citizen. *Id.* ¶ 3.7. The certificate of citizenship identifies his A number as xx-xxx-414. *Id.*, Exh. J. In July 2003, Plaintiff was honorably discharged from the United States military, *Id.* ¶ 3.8.

In 2005, Plaintiff was detained in Pierce County Jail. On September 21, 2005, Plaintiff was approached and questioned by Defendant Skwarski. *Id.* ¶ 3.9. During the conversation, Plaintiff alleges that he

> explained his immigration history, including the facts that he had been a legal permanent resident and applied for – and received – naturalization while serving in the United States military. He also described that he was sworn in as a U.S. citizen . . . .

*Id.* ¶ 3.10. On the same day as that conversation, Plaintiff alleges that Defendant Skwarski

> prepared and signed the Form I-213, "Record of Deportable/Inadmissible alien" regarding Mr. Castillo. [Complaint,] Ex. L (pp. 65-67). ICE Supervisory Special Agent N. Potter III also signed his approval and dated the form. On the I-213, Defendants alleged that, "there is no record to indicate subject applied for relief/immigration status." The I-213, "Record of Deportable/Inadmissible Alien" specifically excludes the information that Mr. Castillo provided, including that he was a U.S. citizen, that he gave a detailed account of his military service, his naturalization application process, and his attendance at his naturalization ceremony.

*Id.* ¶ 3.11.

> On September 23, 2005, Defendants issued a Notice to Appear, Form I-862. *Id.* 3.16. Plaintiff alleges that

> [i]n that document, which is the charging document in removal proceedings, the officers falsely allege that Mr. Castillo was not a citizen of the United States. The Notice to Appear also charged Mr. Castillo as deportable for being present in the United States without admission. Tellingly, Mr. Castillo did not receive a copy of the Notice to Appear until nearly two months later on November 15, 2005, the day he was turned over to the custody of ICE, further depriving him of any ability to present evidence or contradict the complete falsity of that document before his liberty was curtailed.

*Id.*

On November 25, 2005, Plaintiff was transferred to the "Northwest Detention Center, a federal detention center in Tacoma, Washington." *Id.* ¶ 3.18. After being transferred, Plaintiff was approached by a female ICE officer, who introduced herself as Officer Stephens. *Id.* ¶ 3.19. Plaintiff alleges that he

> told Officer Stephens that he was a U.S. citizen, and that he had become a U.S. citizen while serving in the military. He described his naturalization ceremony in great detail. He also told Officer Stephens that his first name

ORDER - 3

had been misspelled on his lawful permanent resident card (commonly
known as a "greencard"). Officer Stephens informed Mr. Castillo that the
information she had in her computer did not substantiate his claims . . . .

*Id.* Plaintiff also alleges that

[d]uring that same interview, Officer Stephens asked Mr. Castillo if he
wanted to go home. Thinking she meant his long time home in Washington
State, Mr. Castillo replied in the affirmative. Officer Stephens then handed
him paperwork to sign. Mr. Castillo refused to sign after reading the
paperwork and realizing that the papers were for a stipulated order of
removal to Belize, his country of birth.

*Id.* ¶ 3.20.

After that interview, another ICE agent approached Plaintiff and identified himself as Officer Carl Stephens. Plaintiff alleges that

Officer Stephens explained that he had been assigned as Mr. Castillo's
Deportation and Removal Officer. Officer Stephens questioned Mr. Castillo
at length, repeating the first Officer Stephens' questions, as well as asking
Mr. Castillo where he was born, where he'd gone to high school, and where
he lived. Mr. Castillo yet again explained to Officer Stephens that he had
obtained permanent residence and ultimately became a U.S. citizen. Mr.
Castillo explained in detail about the different schools he had attended in
the United States, and then talked to Officer Stephens about his enrollment
in the U.S. military, and the naturalization process that he had gone through
to become a U.S. citizen while serving in the military.

*Id.* ¶ 3.21.

Plaintiff was then detained by ICE at the detention center and held on a $25,000 bond. *Id.* ¶ 3.22. Plaintiff alleges that after detaining him, Defendants

placed Mr. Castillo in removal proceedings by filing the Notice to Appear
with the Immigration Court. Attorneys from ICE's Office of Chief Counsel
proceeded to represent ICE against Mr. Castillo in these proceedings. Mr.
Castillo appeared, unrepresented, in Immigration Court on December 21,
2005. He pleaded with the Immigration Judge Kenneth Josephson, once
again explaining that he had been a legal permanent resident, applied for
naturalization and been sworn in as a U.S. citizen. The Judge responded that
Mr. Castillo "can't just expect me to believe you – your claim that you're a
United States citizen." The Immigration Judge asked the attorney
representing ICE for ICE's position. The ICE attorney responded that they
had "checked the database," and there was nothing to indicate that Mr.
Castillo had ever filed to become a U.S. citizen.

*Id.* ¶ 3.26. The immigration judge reset the hearing for a month in order to allow the parties to gather more information. During this continuance, Plaintiff was detained. He alleges that he

ORDER - 4

> again talked to his deportation officer to see if the deportation officer had checked Mr. Castillo's military records, his social security records, or his immigration file in order to verify Mr. Castillo's claim of citizenship. Whenever possible, Mr. Castillo followed up with Officer Stephens, asking for updates on his case. He repeatedly informed Officer Stephens that he was a U.S. citizen, mentioning his military record, his social security number, and other identifying information. His deportation officer simply stated that he would keep looking.

*Id.* ¶ 3.27.

On January 24, 2006, the immigration court held a second hearing in Plaintiff's deportation proceeding. Plaintiff alleges that he

> again explained that he had served his country in the military and had been honorably discharged after serving more than six years. Most importantly, he explained that while in the military he had applied for naturalization and been sworn in as a U.S. citizen. He testified that he had a copy of his military identification and further explained that he had his official discharge papers in the trunk of his car and that if given the opportunity he would present them to the Immigration Court.

*Id.* ¶ 3.28. At the hearing, ICE's representative "affirmed that they had found nothing in their database to support Mr. Castillo's claim" and the immigration judge "then ordered Mr. Castillo removed from the United States." *Id.*

Plaintiff appealed the removal order to the Board of Immigration Appeals and obtained legal counsel from the Northwest Immigrant Rights Project. *Id.* ¶ 3.30. Plaintiff's counsel filed public records requests and obtained documents that

> revealed the veracity of Mr. Castillo's specific statements about his immigration status and citizenship and showed that ICE had assigned him . . . two A numbers – xx xxx 541 and xx xxx 414 – which were linked by the common name, social security number, and evidently fingerprints on file. Still, the government did nothing, and forced Mr. Castillo to request further records using both A numbers, which he did on April 28, 2006.

*Id.* Plaintiff alleges that his immigration status and citizenship information was in his immigration file and that

> during the entire length of Mr. Castillo's unlawful detention, ICE had access to Mr. Castillo's complete immigration history, his social security number, and his fingerprints, his date of birth, his parents' names, and numerous other details, each of which independently would have revealed Mr. Castillo's citizenship status. Even a simple name search would have revealed Mr. Castillo's status. When confronted with repeated and credible claims of citizenship and a directive from the Immigration Court to investigate Mr. Castillo's claims, any reasonable officer or supervisor is

constitutionally mandated to perform a search of ICE records using Mr.
Castillo's name, social security number, or fingerprints. Defendants'
repeated failure to conduct even the most minimal investigation of their
own records is patently unreasonable and arbitrary.

*Id*. ¶ 3.31.

On June 29, 2006, the attorney representing ICE filed a motion to dismiss the deportation proceeding against Plaintiff. As of that date, Plaintiff had been detained for "226 days (seven-and-a-half months)." *Id*. ¶ 3.32. Plaintiff alleges that the attorney for ICE advised the immigration court that

> the proceedings had been "improvidently begun." Shockingly, ICE <u>did not reveal</u> that Mr. Castillo was a citizen in its pleading, which led the charges to be dismissed <u>without prejudice</u>. [Complaint,] Ex. N (p. 73). As a result, Immigration Judge Josephson dismissed the case "without prejudice" and noted that the rationale for the dismissal was "DHS Request" rather than due to the fact that Mr. Castillo is a U.S. Citizen. Mr. Castillo continues to live in fear that he may be unlawfully seized and detained again by ICE in the future.

*Id*. (emphasis in original).

**B.     Defendants' Exhibits**

Defendants claim that, at some point after Plaintiff became a United States citizen, "an unidentified person changed plaintiff's last name in A file xx-xxx-414 from 'Castillo' to 'Castiuo'." Dkt. 22 at 4 (citing *id*., Exh. J (Dkt. 22-11), Declaration of Ben Maxwell ("Maxwell Decl."), ¶ 4). Plaintiff's first name was also changed from "Renison" to Rennison." Maxwell Decl., ¶ 4. Therefore, the name that corresponded to A number xx-xxx-414 was "Rennison Castiuo."

Defendant Skwarski confirms that she interviewed Plaintiff at the Pierce County Jail on September 21, 2005. Dkt. 22, Exh. B, Declaration of Linda Skwarski ("Skwarski Decl."), ¶ 3a. She concedes that she has "no recollection of [her] interactions with [Plaintiff]." *Id*. She does, however, claim that she searched the ICE Central Index System database to verify Plaintiff's assertions that he was an American citizen. *Id*. ¶ 3c. After conducting "all reasonable checks with the information provided" to her under

Plaintiff's A number xx-xxx-541 file, Defendant Skwarski prepared an Arrest Warrant, Notice to Appear, and Notice of Custody Determination. *Id.* She claims that

> [t]here was no other information, evidence, or investigation to substantiate continuance of this case. Acting within the scope of my employment, I had no further means of ascertaining [Plaintiff's] immigration status, and was then required to move forward with removal proceedings.

*Id.*

On September 23, 2005, Defendant Potter approved the documents prepared by Defendant Skwarski thereby initiating removal proceedings against Plaintiff under Plaintiff's original alien file, A number xx-xxx-541, with a Notice to Appear (Form I-862). *Id.* at 9. The Notice to Appear charged Plaintiff with removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(I) (INA § 212(a)(6)(A)(I)), alien present in the United States without being lawfully admitted, and 8 U.S.C. § 1182(a)(2)(A)(i)(I) (INA § 212(a)(2)(A)(i)(I)), alien convicted of a crime of moral turpitude. *Id.*

The arrest warrant states that Plaintiff was in the United States in violation of the immigration laws of the United States and directs any officer of the Immigration and Naturalization Service to take Plaintiff into custody pursuant to the immigration laws of the United States. *Id.*, p. 11. Defendant Potter's decision to issue the arrest warrant was based upon Defendant Skwarski's investigation and Defendant Potter never saw nor spoke with Plaintiff. *Id.*, ¶ 3a.

Upon Plaintiff's arrival at the detention center, Defendant Julie Stephens served Plaintiff with the Arrest Warrant, the Notice to Appear before an Immigration Judge, and the Notice of Custody Determination. Dkt. 22, Ex. C, Declaration of Julie Stephens, ¶ 5. When Plaintiff told Defendant Julie Stephens that he was a United States citizen, she searched the Central Index System and could not find any evidence that Plaintiff was a citizen. *Id.* ¶ 3. She also claims that Plaintiff did not provide her with any evidence that he was a citizen. *Id.* ¶ 4. After serving Plaintiff with the Arrest Warrant, Notice of Custody Determination, and the Notice to Appear, Defendant Julie Stephens

1 asked Defendant Carl Stephens to conduct a computer systems search for Plaintiff's name. *Id*. ¶ 6.

After discussing Plaintiff with Defendant Julie Stephens, Defendant Carl Stephens also conducted a search in the Central Index System and could find no evidence documenting that Plaintiff was a United States citizen. Dkt. 22, Ex. D, Declaration of Carl Stephens, ¶ 3. Defendant Carl Stephens claims that he asked Plaintiff where Plaintiff's DD Form 214 and his Naturalization Certificate were located and that Plaintiff did not know where either document was located. *Id*. ¶ 4.

During the first hearing before Immigration Judge Kenneth Josephson, Plaintiff repeatedly asserted that he was a naturalized U.S. citizen. *See* Dkt. 22, Exh F. However, Plaintiff offered no documentary proof of his citizenship. *Id*. at 4, lines 14-20. The judge informed Plaintiff that he could not simply state that he was a citizen but needed to provide evidence of his citizenship. *Id*. at 6, lines 22-25, and 7, lines 1-6.

At the next hearing on January 24, 2006, ICE Assistant Chief Counsel Thomas Molloy represented DHS. Mr. Molloy told Immigration Judge Josephson that he could find no records of Plaintiff's claimed naturalization in the A number 541 file. Dkt. 22, Ex. G at 14, lines 2-4. Judge Josephson asked Plaintiff if he had his military discharge or citizenship papers and Plaintiff told the court he had never received his citizenship papers and his military discharge papers were in the trunk of his car. *Id*. at 18, lines 1-13, and 19, lines 14-19. After questioning Plaintiff about his status, Judge Josephson ordered Plaintiff removed from the United States to Belize. *Id*. at 30-34.

### III. DISCUSSION

Plaintiff has brought this action under *Bivens v. Six Unknown Named Agents of the Bureau of Narcotics*, 403 U.S. 388 (1971).[1] Defendants have submitted a motion to

---

[1] *Bivens* was the first Supreme Court decision authorizing plaintiffs to bring claims for money damages against individual federal officials based on constitutional violations where no federal statute authorized such a suit; courts have subsequently referred to these as "*Bivens* claims."

dismiss, or in the alternative, a motion for summary judgment. Dkt. 22. Defendants have also submitted several exhibits in support of their motion. *Id.*, Exhs. A-J. If, on a motion to dismiss for failure to state a claim

> matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). In compliance with this rule of procedure, the Court will first consider Defendants' motion to dismiss and arguments regarding Plaintiff's failure to state a claim. For this portion of the analysis, the Court will exclude the exhibits submitted by Defendants.

**A.     Motion to Dismiss**

Defendants Melendez and Potter argue that Plaintiff has failed to state a claim against them upon which relief may be granted because the claims are based solely on the doctrine of respondeat superior. Dkt. 22 at 9, lines 2-6. Defendants also argue that Plaintiff's complaint should be dismissed because it does not meet the pleading requirements set forth in the recent Supreme Court decisions of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Dkt. 22 at 18-20.

**1.     Pleading Standard**

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).

Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

ORDER - 9

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555- 558. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id*.

### 2. Defendants' Motion

Defendants challenge whether Plaintiff has stated a *Bivens* claim for supervisor liability and whether Plaintiff has stated valid claims of Constitutional violations.

#### a. Supervisor Liability

Defendants argue that in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009), "the Supreme Court eliminated the theory of supervisory liability from *Bivens* suits." Dkt. 22 at 10. In *Iqbal*, the Court stated that because "vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). Although this holding seems to have limited the liability of supervisors, the Court disagrees with Defendants' proposition that supervisor liability has been "eliminated."

In an opinion issued post-*Iqbal*, the Ninth Circuit identified four general situations in which supervisory liability may be imposed:

> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others.

*Al-Kidd v. Ashcroft*, 580 F.3d 949, 965 (9th Cir. 2009) (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)).

In this case, Defendant Melendez argues that the Court should dismiss Plaintiff's claims against him because the complaint lacks an allegation of his personal participation. Dkt. 22 at 11. The Court agrees. Plaintiff's complaint alleges as follows:

> 1.2.5. At all times relevant, Michael Melendez was the Immigration and Customs Enforcement Supervising Deportation and Removal Officer for the Northwest Detention Center. On information and belief, at all times relevant, Michael Melendez was responsible for training and supervision of the ICE agents and officers whose conduct caused the injuries alleged herein. As part of his job responsibilities, Officer Melendez had a duty to ensure that no U.S. citizens were detained by ICE. At all relevant times Officer Melendez was acting under color of federal law and is sued in his individual capacity.
>
> ***
>
> 3.33. On information and belief, with deliberate indifference, intent, or reckless disregard, Defendants failed to adequately and properly train and supervise Agents Carl Stephens and Julie Stephens and other officers and agents involved in the arrest, detention, questioning, and removal proceedings to which Mr. Castillo was subjected. On information and belief, Defendants' failure to provide proper and adequate training and supervision was a proximate cause of the injuries that Mr. Castillo suffered.

Complaint. The pleaded facts against Defendant Melendez are no more than labels and conclusions because Plaintiff alleges only that Defendant Melendez "was responsible for training and supervision" and that he failed to provide "proper and adequate training." Moreover, based on these assertions, the Court is left to simply infer the mere possibility of culpable conduct by Defendant Melendez. Therefore, the Court grants Defendants' motion on this issue and Plaintiff's claims against Defendant Melendez are dismissed without prejudice.

With respect to Defendant Potter, he argues that Plaintiff's complaint against him is "similarly flawed." Dkt. 22 at 11. The Court disagrees because Plaintiff has alleged

more than mere labels and conclusions. For example, Plaintiff has alleged that (1) Defendant Potter unlawfully approved the Form I-213 and issued an invalid Notice to Appear when he knew, or recklessly or callously disregarded evidence that Plaintiff was a United States citizen, Complaint, ¶ 3.11-3.13, and (2) Defendant Potter's failure to conduct any investigation into the I-213, despite inconsistencies, demonstrates deliberate indifference to [Plaintiff's] constitutional rights, *Id*. ¶ 3.33, 5.3, 5.7. The Court finds that Plaintiff has pled sufficient facts to state a claim that is plausible on its face. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's claim against Defendant Potter.

### b. Constitutional claims.

Defendants argue that Plaintiff asserts Constitutional violations without adequately alleging facts to support those claims. Dkt. 22 at 18-20. The Complaint alleges violations of Plaintiff's Fourth and Fifth Amendment rights. With respect to the former, Plaintiff claims that Defendants violated his "clearly established right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment . . . ." Complaint, ¶ 5.1. The seizure of an individual violates the Fourth Amendment if it is objectively unreasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). The Ninth Circuit has held that courts recognize

> challenges to the validity of searches and seizures conducted pursuant to a warrant if the affidavit in support of the warrant included false statements or material omissions that were made intentionally or recklessly. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.1985) (extending *Franks* to material omissions).

*Al-Kidd*, 580 F.3d at 973.

In this case, Plaintiff argues that the complaint contains sufficient factual allegations that

> both the arrest warrant and the supporting documents (Form I-213 and Form I-862) plainly were replete with material omissions – including the omission of Mr. Castillo's detailed statements that he is a U.S. Citizen – and they are replete with false statements – including inaccurate reports of Mr. Castillo's immigration history. Such falsities and omissions render those documents invalid.

ORDER - 12

Dkt. 23 at 9. The Court agrees to the extent that the complaint contains sufficient factual allegations to create a plausible claim for a violation of an individual's Fourth Amendment rights. Therefore, Defendants' motion is denied on this issue.

With respect to the Fifth Amendment, Plaintiff claims that Defendants violated his right to due process of law. Complaint, ¶ 5.5. The Ninth Circuit has recently held that, when a court is "dealing with the detention of an individual who claims to be a United States citizen," if the individual's "claim is true, his detention under the [Immigration and Nationality Act] violates the Non-Detention Act as well as the Due Process Clause of the Constitution." *Flores-Torres v. Mukasey*, 548 F.3d 708, 712 (9th Cir. 2008).

In this case, it is undisputed that Plaintiff was a United States citizen and that he was detained by ICE. The Court finds that Plaintiff has alleged facts that create a plausible claim for a violation of Plaintiff's due process rights. Therefore, Defendants' motion is denied on this issue.

### 3. Conclusion – Motion to Dismiss

The Court finds that Plaintiff has failed to state a claim upon which relief may be granted against Defendant Melendez. Therefore, Defendants' motion to dismiss is granted on this issue and Plaintiff's claim against Defendant Melendez is dismissed without prejudice. The Court denies the remainder of Defendants' motion to dismiss.

## B. Motion for Summary Judgment

Defendants Julie Stephens and Carl Stephens argue that they are entitled to summary judgment based on qualified immunity because they acted pursuant to a valid arrest warrant. *Id.*, lines 7-9. Defendant Skwarski also argues that she is entitled to summary judgment on the issue of qualified immunity. *Id.* For this portion of the opinion, the Court will consider matters outside the pleading that have been presented to the Court.

1. **Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### 2. Qualified Immunity Standard

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, if a constitutional violation occurred, officials are entitled to qualified immunity if they acted reasonably under the circumstances. *Millender v. County of Los Angeles*, 564 F.3d 1143, 1148 (9th Cir. 2009). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009), and protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to a plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *McSherry v. City of Long Beach*, 560 F.3d 1125, 1129-30 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. *Pearson*, 129 S. Ct. at 818 (overruling holding in *Saucier* that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); *McSherry*, 560 F.3d at 1130.

### 3. Defendants' Motion

Defendants argue that they are entitled to qualified immunity from Plaintiff's claims of constitutional violations. Dkt. 22 at 14-18. Plaintiff counters that he "must be afforded a right to conduct discovery in which he confronts the Defendants with their admissions and examines the inconsistencies regarding the purported searches that were conducted." Dkt. 23 at 24 (citing Fed. R. Civ. P. 56(f)). The Supreme Court has

recognized that limited discovery, tailored to the issue of qualified immunity, will sometimes be necessary before a district court can resolve a motion for summary judgment. *See Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987); *see also Crawford-El v. Britton*, 523 U.S. 574, 593 n. 14 (1998) (plurality opinion) (stating that qualified immunity exists to protect officials from "broad-reaching discovery" but not from discovery altogether (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, (1982))).

In this case, Plaintiff argues that the Court should allow limited discovery before ruling on the issue of qualified immunity and, pursuant to Fed. R. Civ. P. 56(f), has submitted a declaration by counsel in support of the discovery request. Counsel for Plaintiff declares as follows.

> 2. . . . Defendants' declarations raise material facts concerning what actions they took to search for evidence of Mr. Castillo's citizenship in their own records. Defendants' arguments are inconsistent with their declarations and raise serious questions regarding whether any competent search of Defendants' records was made prior to and during Mr. Castillo's incarceration.
> 3. Mr. Castillo must be afforded the right to conduct discovery in which he confronts the Defendants with their admissions regarding the types of searches that are possible and examines the inconsistencies regarding the purported searches that were conducted and the results that necessarily would have been returned had those searches been conducted.

Dkt. 25, Declaration of Kimberly Evanson. The Court agrees with Plaintiff to the extent that limited discovery is appropriate to develop the record as to the facts regarding qualified immunity issues. Therefore, the Court will deny Defendants' motion for summary judgment without prejudice pursuant to Fed. R. Civ. P. 56 (f)(1). The parties are ordered to confer and submit (1) a proposed limited discovery schedule and (2) a deadline for either a dispositive motion re: qualified immunity or a full joint status report as previously ordered by the Court (*see* Dkt. 5). The parties must submit their plan to the Court no later than December 31, 2009.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. 22) is **GRANTED in part** and **DENIED in part** as explained herein. Defendant Melendez is **DISMISSED without prejudice**. The parties must file a joint submission as explained herein no later than December 31, 2009.

DATED this 10th day of December, 2009.

BENJAMIN H. SETTLE
United States District Judge